**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: 1:16-cv-23020-RNS

JUAN CARLOS GIL,

      Plaintiff,

v.

WINN-DIXIE STORES, INC.,

      Defendant.

_____/

**PLAINTIFF JUAN CARLOS GIL'S RESPONSE IN OPPOSITION TO DEFENDANT**
**WINN-DIXIE STORES, INC'S MOTION FOR JUDGMENT ON**
**THE PLEADINGS [D.E. 15]**

Plaintiff, JUAN CARLOS GIL ("Gil"), by and through his undersigned counsel, hereby

serves his Response in Opposition to Defendant WINN-DIXIE STORES, INC's ("Winn-Dixie")

Motion for Judgement on the Pleadings (the "Motion"), and in support thereof states as follows:

## I.      INTRODUCTION

Winn Dixie though their motion seeks to exclude and isolate a group of people from their

businesses contrary to the spirit of our times and work towards universal human dignity for the

disabled community. Winn-Dixie wants to create an endorsed and approved zone of

discrimination, Apartheid here in America, at the grocery-store counter.

This Court should deny Winn-Dixie's Motion because Title III of the Americans with

Disabilities Act ("ADA") applies to internet websites, and more specifically to Winn-Dixie's

website, "https://www.winndixie.com" (the "Website").Winn-Dixie is the fifth-largest

supermarket chain in the United States based by store count.  It owns and operates grocery and

drugstores in over 518 neighborhoods in the southern Untied States, and are places of public accommodation, subject to the requirements of the ADA.

Winn-Dixie owns, maintains and operates its Website, which is intended to be accessed and used by the public. The Website enables Winn-Dixie customers to locate the addresses of physical stores, obtain coupons (which can only be applied to items purchased in Winn-Dixie's physical stores), re-fill prescriptions (which can be picked up at Winn-Dixie's in-store pharmacies), sing up for customer rewards, get information related to product recalls, and receive home-cooking recipes and tips for products purchased at Winn-Dixie's in-store locations.

The ADA precludes Winn-Dixie from discriminating against disabled individuals by denying them full use and enjoyment of the services provided by its Website. As alleged in the Complaint, the Website does not comply with the requirements of the ADA and is inaccessible to Gil – a person who is visually impaired.  Gil's inability to access the Website impedes his full and equal enjoyment of the goods and services offered by Winn-Dixie.

While the issue of direct applicability of the ADA to websites has not been squarely ruled upon by the Eleventh Circuit Court of Appeals, numerous district courts and states courts throughout the country have determined that the ADA is applicable.

These courts, along with the United States Department of Justice (the "DOJ"), treat the ADA as an elastic statute, which ensures accommodations and services provided by places of public accommodation to individuals with disabilities, including those provided by Winn-Dixie, keep pace with technological innovation. For the reasons set forth herein, Gil urges this Court to adopt the reasoning of these district courts and the DOJ, and deny Winn-Dixie's Motion.

## II.    <u>FACTUAL ALLEGATIONS</u>

2

1.     Gil has a "qualified disability" under the ADA, which prevents him from accurately visualizing his surroundings, adequately traversing obstacles and walking without assistance. [D.E. 1, ¶ 12].

2.     Winn-Dixie is the owner and operator of a chain of grocery and pharmacy stores, which are open to the public. [D.E. 1, ¶¶ 13-14].

3.     Winn-Dixie operates the Website, which enables members of the general public to locate Winn-Dixie's physical stores, fill/re-fill prescription medications for in-store pick up, and obtain information, cooking recipes and tips regarding products sold at Winn-Dixie's physical stores. [D.E. 1, ¶¶ 19, 21].

4.     Gil is a customer of Winn-Dixie's grocery and pharmacy stores and desires to re-fill his pharmacy prescriptions through the Website's online prescription re-fill service and obtain information regarding Winn-Dixie's in-store products. [D.E. 1, ¶¶22, 27].

5.     Due to Gil's disability, he must use commercially available screen-reader software to access information and services available on any web page including the Website. [D.E. 1, ¶¶23-24].

6.     During June and July of 2016, Gil attempted to utilize the Website to obtain information regarding Winn-Dixie's in-store products and access Winn-Dixie's on-line pharmacy services. [D.E. 1, ¶27]. However, the Website did not integrate with Gil's screen-reader software nor contain any function for Gil to comprehend the website through other means and thus Gil could not access the Website [D.E. 1, ¶¶27].

7.     Gil desires to use the Website in the future. [D.E. 1, ¶31]. However, the Website's inaccessibility prohibits Gil from using its services as experienced by the general public. [D.E. 1,

3

¶32]. The Website is not compatible with any commercially available screen-reader software, which would enable a blind individual to access the Website. D.E. 1, ¶33].

### III.     STANDARD OF REVIEW

A motion for judgment on the pleadings may be granted "when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts." *Stoneeagle Servs. v. Pay-Plus Solutions*, 2015 U.S. Dist. LEXIS 15144, at *3 (M.D. Fla. 2015) (citing *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998)). This motion is governed by the same standard as a Rule 12(b)(6) motion to dismiss, which merely requires "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing *Hawthorne v. MacAdjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998). In reviewing a motion for judgment on the pleadings, the court must accept all facts in the pleadings as true and view them in the light most favorable to the non-moving party. *IMX, Inc. v. E-Loan, Inc*., 748 F. Supp. 2d 1354, 1356 (S.D. Fla. 2010).

### MEMORANDUM OF LAW

The ADA is a remedial statute that is construed liberally to "effectuate its *sweeping* purpose to forbid discrimination against disabled individuals in major areas of public life." *Mary Jo C. v. N.Y. State & Local Ret. Sys.,* 707 F.3d 144, 160 (2d Cir. 2013) (emphasis added). Access to information and the social and economic opportunities that flow therefrom is one of the major areas of public life the ADA sought to open for persons with disabilities. *Authors Guild, Inc. v. HathiTrust,* 755 F. 3d 87, 102 (2d Cir. 2014) (42 U.S.C. § 12101(a)(7)).  v

Title III of the ADA broadly prohibits discrimination by public accommodations through its mandate that: "[n]o individual shall be discriminated against on the basis of disability in the full  and  equal  enjoyment  of  the  goods,  services,  facilities,  privileges,  advantages,  or

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. The statute lists the following establishments as public accommodations, which must afford people with disabilities equal access:

> (A)  an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B)  a restaurant, bar, or other establishment serving food or drink;
>
> (C)  a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D)  an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E)  a bakery, **grocery store**, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F)  a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G)  a terminal, depot, or other station used for specified public transportation;
>
> (H)  a museum, library, gallery, or other place of public display or collection;
>
> (I)  a park, zoo, amusement park, or other place of recreation;
>
> (J)  a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K)  a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> (L)  a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181. As with the rest of the ADA, the statute's legislative history indicates this list of public accommodations "***should be construed liberally***" to afford people with disabilities equal access to the wide variety of establishments available to the non-disabled. *PGA Tour, Inc., v. Martin*, 532 U.S. 661, 676-77 (2001) (expanding the ADA to hold that golf courses, including

play areas are places of public accommodation during professional tournaments) (emphasis added).

In its Motion, Winn-Dixie argues the ADA does not apply to its Website by asserting the ADA only applies to physical locations, and because Gil has not alleged an adequate nexus between the website and any particular Winn-Dixie store.  These arguments fail.

The Website **is** a public accommodation under Title III of the ADA because: (1) the statutory construction of the ADA demonstrates its applicability is not limited to "brick and mortar" locations; (2) Congress' intent was that the ADA should be responsive to changes in technology especially with respect to available accommodations; and (3) the DOJ has interpreted the ADA to apply to websites.

Further, while it is not required that a website have a nexus with a physical location in order to be considered a "public accommodation," Title III of the ADA applies to the Website at issue because the Website has a nexus with Winn-Dixie's physical stores.

Specifically, the Website enables Winn-Dixie customers to locate the addresses of physical stores, obtain coupons (which can only be applied to items purchased in Winn-Dixie's physical stores), re-fill prescriptions (which can be picked up at Winn-Dixie's in-store pharmacies), and receive home-cooking recipes and tips for products purchased at Winn-Dixie's in-store locations.

Therefore, Gil's inability to access the Website impedes his full and equal enjoyment of the goods and services offered in Winn-Dixie's physical stores, which are places of public accommodation. Gil is effectively excluded, and segregated into second class citizen status.

1.    **The Website Is a Public Accommodation Under Title III of the ADA.**

This Court should deny Winn-Dixie's Motion, and find the ADA applies to the Website, a place of public accommodation, for the following reasons: (1) the statutory construction of the

6

ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

   **A.** **The Statutory Construction of The ADA Demonstrates Its Applicability Is Not Limited to Physical "Brick and Mortar" Locations.**

 In support of its flawed argument that the ADA only applies to physical locations, Winn-Dixie relies upon a single case decided long before the internet became central in most peoples lives, *Access Now v. Southwest Airlines*, Co. 227 F. Supp. 2d 1312, 1314 (S.D. Fla. 2002).

 *Access Now* appears to be the only decision within the Eleventh Circuit[1] to address the issue of whether the ADA applies to a website.[2] *Access Now* is distinguishable from the instant case, and was decided during a time period in which e-commerce was in its infancy.[3]

 In *Access Now*, the plaintiff filed a lawsuit against Southwest Airlines alleging its website, Southwest.com, violated the ADA because it was inaccessible to blind persons using a screen reader. *Id.* at 1316. The plaintiff alleged the website denied equal access to Southwest

---

[1] In its Motion, Winn-Dixie acknowledges the Eleventh Circuit has not yet ruled on whether a website is a place of public accommodation under the ADA. [D.E. 15, p. 4]. In *Access Now, Inc. v. Southwest Airlines, Co.,* 385 F.3d 1324, 1328-29 (11th Cir. 2004), the Eleventh Circuit dismissed the plaintiff's appeal because the plaintiff presented a new theory of liability that the district court did not have an opportunity to consider, namely, that Southwest Airlines as a whole is a place of public accommodation because it operates a travel service. The Eleventh Circuit in that opinion did not ultimately decide the issue of whether a website is a place of public accommodation under the ADA.

[2] In *Gomez v. Lindeberg USA, LLC,* 16-22966-CIV-WILLIAMS (S.D. Fla. 2016) the plaintiff alleged defendant's website violated Title III of the ADA because it was inaccessible to the blind. [D.E. 1]. The Defendant did not answer the Complaint, and the district court after reviewing the other districts courts' holding in similar cases, entered a default judgment, which required the defendant to immediately undertake remedial measures to make its website, www.jlindebergusa.com compliant with the ADA and accessible to people with visual disabilities. [D.E. 23, ¶ 3].

[3] In 2004 Google, Inc. had not even released Gmail as a product until Aril 2004 and had not even offered its shares to public and not till February 2004 did Facebook founder  Mark Zuckerberg launch "Thefacebook", originally located at thefacebook.com. as a college social media website for the Ivy League College system .

Airline's "virtual ticket counters as they exist on-line," which enabled members of the general public to book flights through the defendant's website. *Id.* at 1321. The plaintiff argued Southwest.com was a "place of public accommodation" because it qualified as an "exhibition," "display," and "sales establishment." *Id.* at 1318.

In granting Southwest Airline's Rule 12(b)(6) motion to dismiss, the district court first determined Southwest.com was not a "place of public accommodation" as defined by the plain language of the ADA. *Id.* at 1317. The court applied the doctrine of *ejusdem generis*, which states "where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." *Id.* at 1318.

In applying this rule, the court held the general terms of the ADA relied upon by the plaintiff: "exhibition," "display," and "sales establishment," were limited to their "corresponding specifically enumerated terms" all of which were concrete structures such as "museum," "library" and "bakery." *Id.* at 1319. Thus, the court declared Southwest.com was not a public place of accommodation because the ADA's language did not expressly enumerate "virtual spaces" as protected by the statute. *Id.*

Since the fourteen (14) year old decision in *Access Now*,[4] other district courts throughout the country have ruled to the contrary and have been critical of *Access Now's* interpretation of the ADA and its application to websites. Courts have more recently held websites are places of public accommodation - regardless of whether the website has a connection with a physical structure.

---

[4] According to the blog at http://www.fatdux.com/ it can be deduced that one year in real time is equal to 4.7 years of internet development time.  i.e.  It can be demonstrated that 65.7 years of internet development improvement and programming has transpired since the *Access Now* case was last reviewed.

For example, in *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196, 199 (D. Mass. 2012) the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

In response, Netflix filed a motion for judgment on the pleadings arguing the plaintiff failed to state a cause of action under the ADA because Netflix's "Watch Instantly" website was not a place of public accommodation. *Id.* Netflix argued its online streaming service was not a public accommodation because "every specific example of a public accommodation in the ADA refers to a public arena that involves people outside of the home." *Id.* at 201. Using the doctrine of *ejusdem generis*, Netflix argued that according to the ADA's language, all "public accommodations" must be accessed outside of a private residence. *Id.*

The district court rejected Netflix's application of *ejusdem generis* outright and found its interpretation of the ADA's plain language to be "unpersuasive." *Id.* In looking at the plain language of the statute, the district court noted the ADA covered the services *"of"* a public accommodation and not services *"in"* a public accommodation. *Id.* (citing 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of* any place of public accommodation. . ."); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("The statute applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation. To limit the ADA to

discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute.") (emphasis added).

This linguistic distinction was crucial, because under Netflix's reading of the ADA, many businesses that provided services to a customer's home – such as plumbers, pizza delivery services, or moving companies would be exempt from the ADA. *Id.* The court rationalized that while the home itself is not a place of public accommodation, entities that provided services in the home through the internet, such as Netflix, could qualify as places of public accommodation. The court held Netflix's streaming service was a public accommodation because its service fell into the same category of services provided by a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment" and "service establishment," which are all enumerated by 42 U.S.C.S. § 12181(7). *Id.* at 200. *See Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n,* 37 F.3d 12, 19 (1st Cir. 1994) (holding the ADA's definition of "public accommodation" is not limited to actual physical structures because it would be irrational for the ADA to only protect an individual who physically enters an office to purchase services, but not to an individual who purchases the same services over the telephone or by mail).

Similarly, in *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d 565, 567 (D. Vt. 2015)*,* the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), a digital library operating reading subscription services on its websites and mobile apps. The plaintiff alleged Scribd's website and apps were incompatible with reader software and denied blind persons' access to Scribd's services, privileges and advantages. *Id.* In response, Scribd moved to dismiss, and argued its website and mobile apps were not places of public accommodation because the ADA did not apply to website operators whose goods or services were not made available at a physical location open to the public. *Id.*

In denying the motion to dismiss, the court rejected Scribd's arguments that Congress's use of the phrase "***place*** of public accommodation" and the doctrine of *ejusdem generis* show that a public accommodation is defined exclusively as a physical space. *Id.* at 572. The court looked at the language of the ADA as written in 42 U.S.C. § 12181(7), which enumerates the categories of public accommodations covered by the statute. The court noted 42 U.S.C. § 12181(7) is entitled, "Public Accommodation" and not "Places of Public Accommodation," and refers to private entities as "public accommodations" and not "places of public accommodation." *Id.* (emphasis added). As such, the ADA's failure to refer to public accommodations as "places" of public accommodation in these two instances suggested to the court that accommodations protected by the statute "must be available to the public, ***but not necessarily at a physical place open to the public***." *Id.*

The *Scribd* court further recognized that when referring to the examples of enumerated public accommodations, the ADA does not always use the word "place," but instead uses the word "establishment." *Id.* (citing 42 U.S.C. § 12181(7)(B) ("other establishment serving food or drink"); *id*. § 12181(7)(E) ("other sales or rental establishment"); *id* § 12181(7)(F) ("other service establishment"); *id*. § 12181(7)(K)("other social service center establishment")). This suggested to the court that Congress likely used the word "place" because there was "no other less cumbersome way" to describe businesses offering those particular goods or services to the public. *Id*. (citing 42 U.S.C. § 12181(7)(D) ("other place of public gathering, not public place of gathering"); *id*. § 12181(7)(H) ("other place of public display or collection, not other public place of display or collection")). Thus, this order of words suggested to the court that the

defining characteristic of a public accommodation was not its "place" or location, but whether the service it provided falls into the categories enumerated in 42 U.S.C. § 12181(7)[5]. *Id.*

Further, the Supreme Court cautions against the limited reading employed by *Access Now* and instructs courts not to "woodenly apply limited principles every time Congress includes a specific example along with a general phrase." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008) (rejecting application of a limiting principle to interpret a statute) (citing *Harrison v. Ppg Indus.*, 446 U.S. 578, 589 (1980) ("rejecting an argument that *ejusdem generis* must apply when a broad interpretation of the clause could render the specific enumerations unnecessary")). Application of a narrowing principle such as *ejusdem generis* is especially improper where, as here, the district court is required to "liberally construe" the categories enumerated in 42 U.S.C. § 12181(7) as mandated by the Supreme Court's decision in *PGA Tour, Inc. PGA Tour, Inc.,* 532 U.S. at 676-77 (the list of public accommodations "***should be construed liberally***" to afford people with disabilities equal access to the wide variety of establishments available to the non-disabled); *Netflix,* 869 F. Supp. 2d at 201*;* (noting the ADA should be construed broadly and rejecting defendant's application of *ejusdem generis*  to 42 U.S.C. § 12181(7)); *Scribd,* 97 F.

---

[5] The *Scribd* court noted that "travel service" was enumerated as an example of a service establishment, which is covered by the ADA. *Id.* (citing 42 U.S.C. § 12181(7)(F)). The court recognized that in 1990, the year of the ADA's enactment, it was entirely plausible that a travel service might operate with no physical location open to the public, and instead conduct all of its business by phone or mail. *Id.* The court found that requiring a physical structure or "some connection to a physical threshold" in order for the ADA to apply would result in arbitrary treatment, and that it would be illogical for the ADA to not cover a customer who bought insurance from a salesman selling policies door to door, but cover a customer who purchased the same policy in the company's office. *Id.* Accordingly, the court determined Congress did not intend for such inconsistent application of the ADA and held that Scribd qualified as a public accommodation because the services Scribd offered fell within the majority of categories of public accommodation enumerated by the ADA such as "library" or "gallery." *Id.* at 576; *See Straw v. ABA*, U.S. Dist. LEXIS 16296, at *19 (N.D. Ill. 2015) ("that the Bar Association may not offer its services at a "physical site," such as a store, does not mean that it cannot be a public accommodation for purposes of the ADA"); *see also Morgan v. Joint Admin. Bd*., 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret "public accommodation" literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store").

Supp. 3d at 572-74 (same). Instead, the dispositive factor in construing a statute such as the ADA is Congress's intent in enacting the statute. *United States v. Alpers*, 338 U.S. 680, 682 (1950) (instructing that the rule of *ejusdem generis* cannot be employed to "obscure and defeat the intent and purpose of Congress"); *United States v. Kennedy*, 233 F.3d 157, 161 n.4 (2d Cir. 2000) ("We note that *ejusdem generis* is only an aid in getting the meaning and does not warrant confining the operations of a statute within narrower limits than were intended.")).

Based on the plain language of the ADA, the Website is a public accommodation because it is a private entity that provides services, which fall into the categories enumerated in 42 U.S.C.S. § 12181(7).

First, as stated in Gil's Complaint [D.E. 1, ¶ 3] and Winn-Dixie's Motion for Judgment on the Pleadings [D.E. 15, p. 4], the Website permits its patrons to manage and refill their pharmacy prescriptions online. The Website provides the services of a "brick and mortar" pharmacy by enabling customers to manage and refill their prescriptions online, the is therefore a public accommodation whose provision of services is protected by the ADA. *See* 42 U.S.C. § 12181(7)(F) (enumerating "pharmacy" as a public accommodation).

The Website also qualifies as a "service establishment," which is also enumerated as a public accommodation pursuant to 42 U.S.C. § 12181(7)(F). The Website not only enables patrons to fill and refill prescriptions, but also enables patrons to locate Winn-Dixie's physical stores, and obtain information, cooking recipes and tips regarding products sold at Winn-Dixie's physical stores. [D.E. 1, ¶¶ 19, 21].

Thus, because the Website provides some of the services provided by Winn-Dixie's grocery stores and in-store pharmacies, it is a place of public accommodation and the Motion should be denied.

**B.** **Congress Intended the ADA to Be Responsive to Changes in Technology - Especially with Respect to Available Accommodations.**

This Court should deny Winn-Dixie's Motion because the ADA's legislative history shows Congress intended the ADA to be responsive to changes in technology especially with respect to available accommodations.

While web-based services did not exist when the ADA was passed in 1990, and could not have been explicitly included in the Act, the ADA's legislative history makes clear Congress intended the ADA to adapt to changes in technology – such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities. . . *should keep pace with the rapidly changing technology of the times.*" *Netflix,* 869 F. Supp. 2d at 200 (citing H.R. Rep. 101-485(II), at 108 (1990)); *Scribd,* 97 F. Supp. 3d at 574 (same) (emphasis added). For example, Congress identified "information exchange" - the principal function of a website - as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)). Thus, as stated by Representative Nadler when the ADA was enacted in 1990:

> Despite Congress' great cognitive powers, it could not have foreseen these advances in technology, which are now an integral part of our daily lives. *Yet Congress understood that the world around us would change and believed that the nondiscrimination mandate contained in the ADA should be broad and flexible enough to keep pace.*

*Scribd,* 97 F. Supp. 3d at 574 (citing *Achieving the Promises of the Americans with Disabilities Act in the Digital Age -- Current Issues, Challenges and Opportunities: Hearing before the H. Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the House Comm. on the Judiciary*, 111th Cong., 2d Sess. 111-95 (2010)). As such, while Congress could not predict

specific advances, it is obvious technology would progress in some manner and thus Congress intended for the ADA to cover new means of access.[6]

Furthermore, the legislative history of the definition of "public accommodation" shows that Congress wanted the list of 12 exemplars enumerated in 42 U.S.C. § 12181(7) to be "construed liberally" in harmony with the ADA's broad purpose. *Netflix,* 869 F. Supp. 2d at 200 (citing S. Rep. No. 116, at 59 (1990) (("[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. ***The Committee intends that the 'other similar' terminology should be construed liberally*** consistent with the intent of the legislation that people with disabilities should have equal access to the array of establishments that are available to others who do not currently have disabilities."). *Scribd,* 97 F. Supp. 3d at 572-73 (same) (emphasis added). Congress intended the defining characteristic of public accommodations be that they offer goods or services to the public, not that they offer goods or services to the public at a physical location. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(III), at 54 (1990)).

Therefore, a person alleging discrimination does not have to prove that the entity being charged with discrimination is similar to the examples of the specific private entities enumerated in 42 U.S.C. § 12181(7). *Id.* Rather, what matters is that the entity provides a service or a good, which enables it to fall into one of the general ***categories*** of entities enumerated by subsection 7. *Id.* (citing S. Rep. 101-116, at 54 (1990)) ("Similarly, although not expressly mentioned, bookstores, video stores, stationary stores, pet stores, computer stores, and other stores that *offer merchandise for sale or rent* are included as retail sales establishments.") (emphasis supplied);

---

[6] Over a decade before the enactment of the ADA, the Supreme Court noted in applying the Rehabilitation Act of 1973 that "[i]t is possible to envision situations where an insistence on continuing past requirements and practices might arbitrarily deprive genuinely qualified handicapped persons of the opportunity to participate in a covered program. Technological advances can be expected to enhance opportunities. . . ." *Se. Cmty. Coll. V. Davis*, 442 U.S. 397, 412 (1979).

*Netflix,* 869 F. Supp. 2d at 200 (citing H.R. Rep. No. 485 (III), at 54 (1990)) ("A person alleging discrimination does not have to prove the entity being charged with discrimination is similar to the examples listed in the definition. Rather, the person must show the entity falls within the overall category.").

Congress enacted Title III of the ADA to protect people with disabilities; whether they encounter discrimination in services offered by a public accommodation in person, through the mail, over the phone, via the Internet, or through some other medium to come next in the evolution of technology. Congress specifically reasoned that the defining feature of a "public accommodation" is the service offered and not the location of the service offered. Here, adoption of Winn Dixie's interpretation of the ADA would contradict Congress's purpose in enacting the statute by relegating it to only physical locations, thus preventing the statute from adapting to technological changes as Congress intended. As stated *supra*, the Website's services such as its online pharmacy feature and coupon-printing feature are readily classified in the categories of services listed in the ADA's definition of "public accommodations."

For these reasons, this Court should take into account the congressional intent and legislative history in enacting the ADA, and deny Winn-Dixie's Motion.

**C.    The DOJ Has Interpreted Title III of the ADA to apply to Websites.**

This Court should accord considerable deference to the DOJ's consistent interpretation that Title III of the ADA applies to websites and mobile apps.

In *Skidmore v. Swift & Co.,* 323 U.S. 134, 139-40 (1944), the Supreme Court opined that an agency administrator's determinations are entitled to some respect because they are "made in pursuance of official duty, and based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." *See also*

*United States v. Mead Corp.,* 553 U.S. 218, 234 (2001) (holding an agency's interpretation of a statute may merit some deference given the "specialized experience and broader investigations and information" available to the agency); *Scribd,* 97 F. Supp. 3d at 575 ("Given the DOJ's body of experience, the Court will give some deference to its conclusion that the ADA applies to websites covered by one of the categories in the statute.").

The DOJ has consistently told courts, members of Congress, and businesses that Title III applies to websites and services provided over the Internet. *Scribd,* 97 F. Supp. 3d at 574 (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996) ("Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet."); 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations.")). In addition, the DOJ is currently in the process of promulgating regulations that would codify the position it has taken to establish the requirements for making websites accessible. *Id.* at 574-75 (citing 75 Fed. Reg. 43460-01)).

For these reasons, this Court should defer to the DOJ's interpretation that Title III of the ADA applies to websites and mobile apps.

### 2.     **The Website Has a Nexus with Winn-Dixie's Physical Stores.**

Winn-Dixie argues that Gil fails to allege an adequate nexus between the Website and any Winn-Dixie store, because he does not allege the Website's inaccessibility was a physical

barrier to his entry into Winn-Dixie's stores or interfered with his ability to access any service provided by such stores. Winn-Dixie's position fails. As argued *supra*, the decisions of *Netflix* and *Scribd* hold that the ADA applies to websites which have no connection with a physical structure.  However, even if a nexus to a physical location was required, as argued by Winn-Dixie.

In support of its position, Winn-Dixie once again cites to *Access Now*, 227 F. Supp. 2d at 1319-20, which reasoned that assuming the ADA did apply to websites, the website must have a nexus with a physical place of public accommodation in order for the statute to apply. In *Access Now* the plaintiff alleged the website denied equal access to Southwest Airline's "virtual ticket counters as they exist on-line," which enabled members of the general public to book flights through the defendant's website. *Id.* at 1321. In reaching its decision that Southwest.com did not satisfy the nexus requirement, the district court compared the case before it with the Eleventh Circuit's decision in *Rendon v. Valleycrest Prods*, 94 F.3d 1279, 1280 (11th Cir. 2002), which held the defendant's fast finger telephone selection process violated the ADA because it deprived the plaintiff' of being a contestant on a game show, which took place in a concrete structure. *Id.* at 1320.[7]

The *Access Now* Court found plaintiff failed to state a claim because Southwest's "virtual ticket counters" existed exclusively online and did not impede plaintiff's ability to access a "specific, physical, concrete space such as a particular airline ticket counter or travel agency." *Id.*

However, contrary to the website at issue in *Access Now* (where there was no direct link with a corresponding physical location), Winn-Dixie's Website has a direct link with the services provided at Winn-Dixie's physical stores. Our case is virtually identical to the issues presented in

---

[7] The *Rendon* Court reasoned the use of such a selection process constituted discrimination under the ADA because the procedure affected the plaintiff's ability to access the defendant's TV studio. *Id.*

*Target Corp.*, 452 F. Supp. 2d 946, 949 (N.D. Cal. 2006). In that case, the plaintiff filed a claim under the ADA against Target Corp., ("Target") alleging its website, Target.com, was inaccessible to the blind. The plaintiff alleged Target.com allowed a customer to perform functions related to Target stores such as accessing information on store locations and hours, refilling prescriptions for pick-up at a store, and printing coupons to redeem at a store. *Id.* In response to the plaintiffs' allegations, Target filed a motion to dismiss arguing the complaint did not allege that plaintiff was denied "physical" access to one of Target's brick and mortar stores. *Id.* at 950. Target relied upon the decisions of *Rendon* and *Access Now* to erroneously argue that the nexus theory applies only to the denial of "physical" access to a place of public accommodation, and thus the plaintiff's claim that Target.com, rather than Target's stores is inaccessible, is not legally cognizable. *Id.* at 953.

In rejecting defendant's argument, the *Target Corp* Court first turned to the issue of whether the ADA applies to discrimination occurring away from a public accommodation. *Id.* As in *Netflix* and *Scribd*, the court noted the ADA applies to the services ***"of"*** a public accommodation and not services ***"in"*** a public accommodation. *Id.* (emphasis supplied). As such, limiting the ADA to discrimination in the provision of services occurring ***on*** the premises of a public accommodation "would contradict the plain language of the statute." *Id.* (emphasis added). Accordingly, the court rejected Target's argument that plaintiff's claims must be dismissed because they occurred away from a place of public accommodation such as Target's physical stores. *Id.*

The court also rejected Target's reliance on *Rendon*, and held that *Rendon* neither stated nor suggested that a plaintiff proceeding under the "nexus" theory must plead denial of "physical" access to a place of public accommodation. *Id.* at 955. (citing *Rendon*, 294 F.3d at

1285-86) (For example, even though the plaintiff did not contest the actual physical barriers of the defendant's TV studio, the Eleventh Circuit found that the ADA was implicated because the defendant's use of an inaccessible telephone was an off-site discriminatory procedure that deprived the plaintiff of an opportunity to be a contest at the TV studio, which was a place of public accommodation)). The *Target Corp.* Court concluded plaintiffs stated a claim under the ADA where the "off-site" discrimination caused by their inability to access Target.com prohibited them from fully accessing and enjoying Target's stores. *Id.* at 954.

In addition, the *Target Corp* Court rejected Target's reliance on *Access Now* because the *Access Now* Court did not reach the issue of whether "there is a nexus between a challenged service and an actual, physical place of public accommodation." *Id.* Thus, because the plaintiffs alleged the inaccessibility of Target.com denied the blind the ability to enjoy services of Target's stores, the court found that plaintiffs alleged a cognizable claim under Title III of the ADA. *Id.*

Based on the foregoing, this Court should determine the ADA applies to the Website because Gil has alleged the Website's inaccessibility prevents him from fully enjoying the services of a public accommodation, namely Winn-Dixie's stores. For the same reasons found to be persuasive in *Target Corp.*, the instant case is analogous to the Eleventh Circuit's decision in *Rendon*, whereby the inaccessibility of the defendant's dialing system prohibited the plaintiff from fully participating in the contest held at the defendant's TV studio. *Id.* at 954 (citing *Rendon*, 294 F.3d at 1286)).

As stated in the Complaint, Gil alleges the Website has a direct nexus with a place of public accommodation because the Website services Winn-Dixie's brick and mortar locations. [D.E. 1, ¶¶ 6, 19-20]. The Website enables Winn-Dixie customers to locate the addresses of

physical stores, obtain coupons[8], which can only be applied to items purchased in Winn-Dixie's physical stores, re-fill prescriptions, which can be picked up at Winn-Dixie's in-store pharmacies and receive home-cooking recipes and tips for products purchased at Winn-Dixie's in-store locations. [D.E. 1, ¶¶ 19, 21]; *Compare*, *Target Corp*., 452 F. Supp. 2d at 949 ("Target.com also allows a customer to perform functions related to Target stores. For example, through Target.com, a customer can access information on store locations and hours, refill a prescription or order photo prints for pick-up at a store, and print coupons to redeem at a store"). Further, the front page of the Website has an additional feature entitled "In-Store Services[9]," which provides information to patrons regarding the procurement of discount tickets, floral arrangements, lottery tickets, gift cards, and money transfers at Winn-Dixie's brick and mortar locations. However, Gil cannot access any of these features because the Website is not compatible with any commercial available screen-reader software. [D.E. 1, ¶32].

As found in *Netflix, Scribd, Target* and *Rendon*, the ADA protects the provision of services "of" a public accommodation and not "in" a public accommodation. The Website clearly complements and enhances a multitude of services provided by Winn-Dixie's stores, which are available to the general public. By refusing to make the Website ADA accessible, Winn-Dixie has denied Gil the full use and enjoyment of services provided by a public accommodation and protected by the ADA. Accordingly, Winn-Dixie's Motion for Judgment on the Pleadings must be denied.

---

[8] While not expressly plead in the Complaint, the Website enables patrons to print and use coupons to purchase goods at Winn-Dixie's physical stores through the following link: https://coupons.winndixie.com/coupons/. As such, Gil joins Winn-Dixie in asking that this Court take judicial notice of the Website and incorporate it into the pleadings. [D.E. 15, p. 2, n.1]; *Groupo Televia, S.A. v. Telemundo Comm's Group, Inc.,* 2005 WL 5955701 at *5 (S.D. Fla. 2005) (taking judicial notice of website and information found therein).

[9] https://www.winndixie.com/services/in-store.

**WHEREFORE,** Plaintiff, JUAN CARLOS GIL, respectfully requests this Court enter an Order: 1) denying Winn-Dixie's Motion for Judgment on the Pleadings [D.E. 15]; and 2) entering any further relief this Court deems equitable and just.

Dated this 7th of November, 2016

                                        Respectfully submitted,

                                        *s/ Scott R. Dinin, Esq.*
                                        SCOTT R. DININ, Esq. (FBN 97780)
                                        SCOTT R. DININ, P.A.
                                        4200 NW 7th Ave
                                        Miami, FL 33127
                                        Tel:     (786) 431-1333
                                        Email: inbox@dininlaw.com
                                        **Attorney for Plaintiff Juan Carlos Gil**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 7th day of November, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing, as follows:

**SUSAN V. WARNER, ESQ.**
NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
50 N. Laura Street, 41st Floor
Jacksonville, Florida 32205
Tel: (904) 665-3600
Fax: (904) 665-3699
Email: Susan.warner@nelsonmullins.com
*Counsel for Defendant*