UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23020-CIV-SCOLA/OTAZO-REYES

JUAN CARLOS GIL,

    Plaintiff,

vs.

WINN-DIXIE STORES, INC.,

    Defendant.

_____/

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

    Plaintiff Juan Carlos Gil, who is blind, alleges he is a customer of Winn-Dixie Stores, a chain of grocery stores and pharmacies, and would like to access the information, goods, and services that Winn-Dixie Stores provides to customers via its website at www.winndixie.com. (Compl. ¶ 12, 22, 27.)  The goods and services on the website include, for example, locations of stores, coupons to use in the stores, and the ability to refill pharmacy prescriptions.  (Compl. ¶ 19, 21; Answer ¶ 19, 21; Pl.'s Resp. in Opp. to Def.'s Mot. for J. on the Pleadings at 21.)  Mr. Gil alleges that, like many blind individuals, he accesses information on websites with the assistance of screen reader technology.  (Compl. ¶ 23, 24.)  Screen readers read aloud the information on the website, if the website has been coded to be compatible with screen reader technology.  Mr. Gil alleges that he attempted to access the goods and services available on the Winn-Dixie website, but was unable to do so using his screen reader technology, or any other technology provided on the Winn-Dixie website.  (Compl. ¶ 27, 28.)  Mr. Gil alleges that the goods and services Winn-Dixie Stores provides through its website are inaccessible to him and other individuals who are

1

blind, and that such denial of access is a violation of Title III of the Americans with Disabilities Act (ADA). (Compl. ¶ 1, 32, 33, 59.)

Title III of the ADA provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182. In moving for judgment on the pleadings, Defendant admits that its stores are places of public accommodation within the meaning of the ADA. (Answer ¶ 4, 16). Defendant further admits that, through Winn-Dixie Stores' website, patrons can order prescription refills to be picked up at the store pharmacy; search for nearby stores; and gather information on store hours, products, and services. (Answer ¶ 17, 19, 21; Def.'s Mot. for J. on Pleadings at 2, 6). Yet Defendant nonetheless argues that it has no obligation under the ADA to ensure that Mr. Gil and other blind patrons can access these and other services and advantages offered through its website.

Because Winn-Dixie Stores' argument cannot be squared with the plain language of the statute, the regulations, or with federal case law addressing this issue, the United States respectfully submits this Statement of Interest to clarify public accommodations' longstanding obligation to ensure that individuals with disabilities are not excluded, denied services, or treated differently than other individuals because of the absence of auxiliary aids and services, such as accessible electronic technology. This obligation means that websites of places of public accommodation, such as grocery stores, must be accessible to people who are blind, unless the public accommodation can demonstrate that doing so would result in a fundamental alteration or undue burden.

2

**LEGAL AUTHORITY TO FILE STATEMENT OF INTEREST**

The United States submits this Statement of Interest pursuant to 28 U.S.C. § 517.[1] This litigation implicates the proper interpretation and application of Title III of the ADA, 42 U.S.C. §§ 12181-12189, and the Department of Justice's regulation implementing Title III, 28 C.F.R. pt. 36.[2] Therefore, the United States has a strong interest in the resolution of this matter.

**STATUTORY AND REGULATORY BACKGROUND**

Title III of the ADA prohibits discrimination by public accommodations, prescribing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). A public accommodation is defined as a private entity whose operations affect commerce, and which falls within one of 12 enumerated categories, including a "grocery store . . . or other sales or rental establishment," 42 U.S.C. § 12181(7)(E), and a "pharmacy . . . or other service establishment." 42 U.S.C. § 12181(7)(F). Title III prohibits public accommodations from denying individuals with

---

[1] Under 28 U.S.C. § 517, the Attorney General is authorized to send an officer of the Department of Justice to any district in the United States "to attend to the interests of the United States in a suit pending in a court of the United States."

[2] Congress delegated to the Department the authority to promulgate regulations under, issue technical assistance for, and seek enforcement in federal court of Title III, 42 U.S.C. §§ 12186(b), 12188(b), 12206. Accordingly, the Department's views are entitled to deference. *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations, . . . to render technical assistance explaining the responsibilities of covered individuals and institutions, . . . and to enforce Title III in court, . . . the Department [of Justice]'s views are entitled to deference.").

disabilities the opportunity to participate in or benefit from their goods, services, privileges or advantages or from affording individuals with disabilities an unequal opportunity to participate and benefit from the goods, services, privileges or advantages afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(i) and (ii); 28 C.F.R. §§ 36.202(a) and (b).

Title III further imposes specific statutory and regulatory requirements to ensure that persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. Auxiliary aids and services include qualified interpreters, notetakers, computer-aided transcription services, written materials, open and closed captioning, and accessible electronic and information technology, among other methods. 28 C.F.R. § 36.303(b). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services where necessary for effective communication, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303.

## DISCUSSION

Winn-Dixie Stores, a private chain of grocery/pharmacy stores whose operations affect commerce, is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(E) and (F), and is therefore subject to the statute's nondiscrimination mandate. Defendant nonetheless moves for judgment on the pleadings, arguing that it is not liable for accessibility barriers on the Winn-Dixie Stores' website because websites are never covered under Title III, i.e., that Title III applies only to physical locations. Defendant further argues that, under Eleventh Circuit case law, even if the existence of website accessibility barriers could result in a

4

Title III violation, that claim could only be stated where such barriers categorically prevent an individual with a disability from entering the physical location.  In other words, Defendant argues for judgment as a matter of law because Mr. Gil did not plead that his inability to access Winn-Dixie Stores' website prevented him from entering a Winn-Dixie grocery store.  As discussed below, Defendant's arguments cannot be reconciled with the statute, the legislative history, and the Department of Justice's long-standing interpretation of public accommodations' Title III obligations relating to websites.  Nor can Defendant's arguments be aligned with federal case law, within or outside this circuit.

    A. <u>Title III Coverage of Winn-Dixie Stores' Goods and Services on its Website is Consistent with the Text of the ADA and Congress' Intent</u>

Under the plain language of the statute, Title III applies to discrimination in the goods and services "of" a place of public accommodation, rather than being limited to those goods and services provided "at" or "in" a place of public accommodation.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).  This statutory language demonstrates that goods and services provided off-site are covered, whether provided via website, the telephone or the mail.  *See Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) (limiting Title III to discrimination "occurring on the premises of a public accommodation would contradict the plain language of the statute").  For example, when a medical provider mails an invoice to a customer, the invoice is a service of the public accommodation that is covered by the ADA, and the medical provider must provide the invoice in an alternate format (e.g., electronic, or large print) if needed by an individual with a disability, unless doing so would result in an undue burden or a fundamental alteration.  *See Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1115 (9th Cir. 2000) ("whatever goods or services the place [of public accommodation] provides, it cannot discriminate on the basis

5

of disability in providing enjoyment of those goods and services.")  Likewise, the goods and services of a public accommodation provided via website are covered by the ADA.

Legislative history also supports that websites of public accommodations are covered under Title III.  Congress' purpose in enacting the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), having found that "discrimination against individuals with disabilities persists in such critical areas as . . . public accommodations . . ." and that "many people with physical or mental disabilities have been precluded from [fully participating in all aspects of society]."  42 U.S.C. § 12101(a)(3) and (1).  Although the internet did not exist when Congress enacted the ADA in 1990, Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations.  The House Committee on Education and Labor stated that it intended "that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times," and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities."  H.R. Rep. No. 101-485, pt. 2, at 108 (1990).  Consequently, it is consistent with Congressional intent to include within Title III's coverage the goods and services provided by public accommodations over their websites.  *See Nat'l Fed'n of the Blind v. Scribd*, 97 F.Supp. 3d 565, 574 (D. Vt. 2015) ("It seems likely that making websites compatible with screen reader software is the kind of advanced technology Congress was envisioning.")  The alternative -- excluding all

6

goods and services of public accommodations provided via websites from the ambit of Title III -- would threaten, once again, to exclude people with disabilities from full participation in society.

Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations.[3] The Department is engaged in rulemaking to consider whether specific requirements or technical standards for website accessibility should be developed, but this does not undermine or change public accommodations' longstanding existing obligation to ensure equal access to their goods and services, including those offered via a website, for individuals with disabilities.[4]

---

[3] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

[4] Pursuant to its statutory authority to promulgate regulations to implement Title III of the ADA, on July 26, 2010, the Department issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, announcing the Department's interest in developing more specific requirements or technical standards for website accessibility. 75 Fed. Reg. 43,460 (July 26, 2010). In the ANPRM, the Department reaffirmed its longstanding position that the ADA applies to websites of public accommodations, and reiterated, consistent with the preamble to the 1991 regulations, that the ADA regulations should be interpreted to keep pace with developing technologies. *Id.* at 43,464 ("The Department has also repeatedly affirmed the application of Title III to Web sites of public accommodations."). The Department recognized, however, that in light of inconsistent court decisions on website-related obligations and differing technical standards for determining web accessibility, further guidance was warranted. *Id.* The development of the Department's web regulation is ongoing.

    B.  Title III Coverage of Winn-Dixie Stores' Goods and Services on its Website is Consistent with Eleventh Circuit Case Law

Federal case law within the Eleventh Circuit supports application of Title III to public accommodations' websites. While the Eleventh Circuit has not yet had the opportunity to address website accessibility under Title III, Defendant nonetheless argues that under the Eleventh Circuit's holding in *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002), Title III only covers enjoyment of a defendant's goods, services, and privileges *at a physical location*. (Def.'s. Reply in Supp. of Mot. for J. on the Pleadings at 2.) Defendant's reliance on *Rendon* is misplaced, as in fact, *Rendon* supports the principle that Title III is not artificially limited to discrimination that occurs *on site* at a place of public accommodation. Plaintiffs in that case, individuals who were deaf or had mobility impairments, argued that the telephone screening process for participation in a television quiz show discriminated against them because they could not hear the questions on the phone or could not quickly manipulate the telephone key pad to reply. The parties conceded that the production studio where the quiz show was filmed was a place of public accommodation. *Rendon*, 294 F.3d. at 1283.

Finding that Title III covers "intangible barriers . . . that restrict a disabled person's ability to enjoy the defendant entity's goods, services, and privileges," *id.*, the Eleventh Circuit rejected the production company's argument that, because the alleged discrimination occurred only via phone, the phone line itself had to be a place of public accommodation in order for the phone screening to be covered by the ADA. *Id.* The Eleventh Circuit further rejected the argument that discrimination located physically apart from the production studio was not covered under Title III, and found that plaintiffs stated a valid claim "by alleging that the fast finger telephone selection process is a discriminatory screening mechanism, policy or procedure, which deprives them of the

8

opportunity to compete for the privilege of being a contestant on the Millionaire program." *Rendon*, 294 F.3d. at 1286.

Thus, the *Rendon* court did not rule, as Defendant suggests, that Title III only covers discrimination that prevents someone from physically entering a place of public accommodation. (ECF 19, Def.'s Mot. for J. on Plead. at 7-8.)  Rather, *Rendon* addressed restricting an individual's ability to enjoy the "goods, services, and privileges" of a public accommodation – and Mr. Gil similarly claims that he cannot fully enjoy the goods, services, and privileges of Winn-Dixie stores because of the inaccessibility of www.winndixie.com.  Further, just as *Rendon* held that the phone line itself need not be a place of public accommodation for the barriers posed by the phone line to be covered by Title III, 294 F.3d. at 1283, so too the Winn-Dixie Stores' website need not itself be a place of public accommodation for Plaintiff to state a valid claim.  *See Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 954 (N.D. Cal. 2006) (distinguishing the district court's opinion in *Southwest Airlines* on the grounds that, "[s]ince there was no physical place of public accommodation alleged in [*Southwest Airlines*]*,* the court did not reach the precise issue presently in dispute: whether there is a nexus between a challenged service and an actual, physical place of public accommodation.").  The correct analysis for a Title III website claim is whether an individual has been discriminated against on the basis of disability *in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation*, including the goods and services provided on a website of a place of public accommodation.

Defendant's heavy reliance on the district court's opinion in *Access Now v. Southwest Airlines*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002), is misplaced.  In *Southwest Airlines*, the court

addressed only whether the Southwest Airlines website itself, southwest.com, was a "place of public accommodation" under Title III., i.e., whether a place of public accommodation could exist solely in cyberspace. On that narrow question, the court concluded that "Title III of the ADA governs solely access to physical, concrete places of public accommodation" and thus the website itself was not a place of public accommodation. *Id.* at 1318. Because the plaintiffs in *Southwest Airlines* did not present the broader claim—whether Southwest Airlines operates a place of public accommodation more broadly, e.g., a travel service, which provides some of its services via a website—the district court never reached that question. Indeed, when the case was appealed, the Eleventh Circuit acknowledged the distinction between these two theories of coverage but concluded that the plaintiffs' failure to raise the broader theory below precluded the court from addressing it on appeal. *See Access Now v. Southwest Airlines*, 385 F.3d 1324, 1328 (11th Cir. 2004) ("All of the counts in the complaint thus focused entirely on the inaccessibility of the web site itself as a place of public accommodation, making no connection between Southwest.com and any other supposed place of public accommodation.").

Here, Mr. Gil's complaint includes the broader theory—that Winn-Dixie Stores owns and operates grocery/pharmacy stores, which are unquestionably physical, concrete structures that fall within the enumerated sales and service establishment categories of public accommodation under Title III, and that some of Winn-Dixie Stores' services are provided via its website. Accordingly, this court need not decide whether Winn-Dixie Stores' website itself is a place of public accommodation in order to resolve this motion. Rather, this court need only determine whether Mr. Gil has sufficiently pled that Winn Dixie Stores denied him the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations on the basis of disability

10

when it refused to make its website accessible to blind patrons.  Thus, the district court's analysis in *Southwest Airlines* is inapposite.[5]

### C. Title III Coverage of the Goods and Services on Winn-Dixie Stores' Website is also Consistent with the Case Law in All Other Circuits to have Decided the Issue.

Outside of the Eleventh Circuit, some courts have concluded that Title III reaches all private entities whose operations fall within the 12 statutorily enumerated categories of public accommodation, regardless of whether the entity owns or operates out of a brick and mortar facility.  Other courts have concluded that Title III's prohibition on discrimination in the goods and services "of any place of public accommodation" requires a physical place and that Title III only covers goods and services with a sufficient nexus to that physical place.  But no courts have found, as Defendant proposes here, Title III inapplicable to goods and services provided on a website of a place of public accommodation that has a strong nexus to a physical location.

In the First, Second, and Seventh Circuits, courts have concluded that Title III does not limit places of public accommodation to physical spaces. *See, e.g., Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994) (finding Title III not limited to physical places); *Nat'l Fed'n of the Blind v. Scribd*, 97 F.Supp. 3d 565 (D. Vt. 2015) (finding website with no nexus to a physical space covered under Title III); *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (finding website with no nexus to a physical space covered under Title III); *cf. Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (finding Title III coverage of websites in dicta); *Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co.,* 268 F.3d 456, 459 (7th Cir. 2001) (same); *see also Nat'l Assoc. of the*

---

[5] Because this case does not involve an entity whose operations exist only in cyberspace, this Statement does not address Title III's application to such entities.

11

*Deaf, et al. v. MIT*, 15-cv-30024, 2016 WL 6652471 (D. Mass. Nov. 4, 2016) (denying motion to stay or dismiss claim that defendant violated Title III of the ADA and Section 504 of the Rehabilitation Act by failing to caption its online content); *Nat'l Assoc. of the Deaf, et al v. Harvard Univ.*, 15-cv-30023, 2016 WL 6540446 (D. Mass. Nov. 3, 2016) (same).

These courts' holdings have focused on statutory construction and legislative history, among other reasons.  For example, in *Carparts*, the court reasoned that a "travel service," specifically identified in the statute, does not require a person to physically enter an actual physical structure since many travel services conduct business by phone and mail.  Further, the court noted that neither the statute nor the regulation make any mention of physical boundaries or physical entry.  *Carparts*, 37 F.3d at 19-20.  The court thus concluded that Title III coverage is not limited to businesses with physical structures.  *Id.* at 20.  In *Scribd,* the court found that the statutory language did not require a physical place and that reading the statute to require one would lead to absurd results and arbitrary treatment (e.g., covering a customer who bought an insurance policy in the parent company's office, but not the customer who bought the same policy from a door-to-door salesperson).  97 F. Supp. 3d at 572-73.  The court also reasoned that the ADA's purpose as a remedial statute, as well as Congress' intent that the statute be responsive to changes in technology, supported that Title III's coverage is not limited only to physical locations open to the public.  97 F.Supp. 3d at 573-74.  Under the reasoning of these cases from the First, Second, and Seventh Circuits, clearly Winn-Dixie Stores' website would be covered under Title III of the ADA.

Other courts in the Third, Sixth, and Ninth Circuits have concluded that places of public accommodation must be physical places, and that goods and services without a sufficient nexus to a physical place are not covered under Title III.  *See, e.g., See Weyer v. Twentieth Century Fox*

*Film Corp.,* 198 F.3d 1104, 1114-16 (9th Cir. 2000) (requiring some connection between the goods or services complained of and an actual physical place); *Ford v. Schering-Plough Corp.,* 145 F.3d 601, 612-13 (3d Cir. 1998) (finding no nexus between challenged insurance policy and services offered to the public from insurance office); *Parker v. Metropolitan Life Ins.*, 121 F.3d 1006 (6th Cir. 1997); *Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (ADA claim fails because eBay's services not connected to any physical place); *Cullen v. Netflix, Inc.*, 600 F. App'x 508, 509 (9th Cir. 2015) (Netflix not subject to ADA because Netflix's services not connected to any physical place); *Young v. Facebook, Inc*., 790 F. Supp. 2d 1110 (N.D. Cal. 2011) (ADA claim fails because Facebook's internet services do not have a nexus to a physical place of public accommodation).

These cases have relied, among other bases, on the statutory construction doctrine of *noscitur a sociis* (which says that a term should be interpreted by reference to the accompanying words in the statute), to find that "place of public accommodation" is limited to physical locations because the types of public accommodations listed in the statute all have physical locations. *See Weyer*, 198 F.3d at 1114 (the list of public accommodations in § 12181(7) all are "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services."); *Ford*, 145 F.3d at 614 (list of public accommodations in 12181(7) "refer to places with resources utilized by physical access"). In these cases, the courts found that a place of public accommodation must be a physical place, and the goods and services alleged to be discriminatory must have a sufficient nexus to the physical place to be covered by Title III. In *Weyer*, *Ford*, and *Parker*, all of which involved insurance plans provided by employers to the plaintiff employee, the courts found that there was not a sufficient nexus between the plan provided by the employer,

13

which was not publicly available, and the services offered by the insurance company to the public at its offices.

One district court in the 9th Circuit, which has adopted the nexus approach, addressed facts similar to the instant case. In *National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006), the district court addressed whether goods and services provided on Target's website were covered by Title III. The court held that Target.com was heavily integrated with Target's physical stores and "operates in many ways as a gateway to the stores," and therefore, its inaccessibility would violate the ADA if it "impede[d] the full and equal enjoyment of goods and services offered in Target stores." *Id.* at 955. Similarly, in the instant case, Mr. Gil alleges that the inaccessibility of Winn-Dixie Stores' website impedes his full and equal enjoyment of the goods and services offered in the Winn-Dixie stores because, for example, he cannot access the online coupons to use in the stores or order his medication refills online for pickup at the store. Like in *Target*, Mr. Gil has alleged that the winndixie.com website has a sufficient nexus to its physical stores because barriers on the website impede Mr. Gil's full and equal enjoyment of goods and services offered in the stores. Thus, under *Target* and other nexus approaches in the Third, Sixth, and Ninth Circuits, Winn-Dixie Stores' website would also be covered under Title III of the ADA.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consider this Statement of Interest in this litigation.

Dated:  December 12, 2016

| | |
|---|---|
| WIFREDO A. FERRER<br>United States Attorney<br>Southern District of Florida | VANITA GUPTA<br>Principal Deputy Assistant Attorney General<br><br>EVE L. HILL<br>Deputy Assistant Attorney General |
| /s/ Veronica Harrell-James<br>VERONICA HARRELL-JAMES<br>Assistant United States Attorney<br>Fla. Bar No. 644791<br>99 N.E. 4th Street<br>Miami, Florida 33132<br>Tel: (305) 961-9327<br>Fax: (305) 530-7139<br>Veronica.Harrell-James@usdoj.gov | REBECCA B. BOND<br>Chief<br>KATHLEEN P. WOLFE<br>Special Litigation Counsel<br>AMANDA MAISELS<br>Deputy Chief<br>_____<br><br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. - NYA<br>Washington, DC 20530<br>Telephone: (202) 307-0663<br>Facsimile: (202) 307-1197<br>Amanda.maisels@usdoj.gov<br>*Counsel for the United States of America* |

15

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 12, 2016, I electronically filed the **Statement of Interest of the United States of America** with the Clerk of the Court using the CM/ECF system, which will send Notices of Electronic Filing (NEF) to all registered participants and that paper copies will be sent to those counsel listed as non-registered participants on this same date.

            By:    */s/ Veronica Harrell-James*
                       VERONICA HARRELL-JAMES
                       Assistant United States Attorney

                       *Counsel for United States of America*