United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Juan Carlos Gil, Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 16-23020-Civ-Scola |
| | ) |
| Winn Dixie Stores, Inc., Defendant | ) |

**Order on the Defendant's Motion to Dismiss and Motion to Strike**

The Plaintiff, Juan Carlos Gil, sued Winn-Dixie Stores, Inc. ("Winn-Dixie") for injunctive relief under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181–12189 (the "ADA"). This matter is before the Court on Winn-Dixie's Motion for Judgment on the Pleadings. (ECF No. 15.) After briefing on Winn-Dixie's motion was completed, the Department of Justice filed a Statement of Interest on behalf of the United States of America (the "Government"). (ECF No. 23.) Winn-Dixie subsequently moved to strike the Government's Statement of Interest. (ECF No. 25.) For the following reasons, the Court **denies** Winn-Dixie's motion to strike and **denies** the Motion for Judgment on the Pleadings.

**1.     Background**

Plaintiff Gil is legally blind and suffers from a learning disability; "therefore [he] is substantially limited in performing one or more major life activities . . . ." (Compl. ¶ 12, ECF No. 1.) In order to access and comprehend information on the internet, Mr. Gil must use screen reader software. (*Id.* ¶¶ 23-24.) Defendant Winn-Dixie is a grocery and pharmacy store chain. (*Id.* ¶ 14.) Winn-Dixie operates a website, www.winndixie.com, that allows consumers to locate physical Winn-Dixie store locations, fill and refill prescriptions for in-store pick-up or delivery, learn about Winn-Dixie brand items, access home-cooking recipes, and receive information about product recalls.[1] (*Id.* ¶¶ 17, 19.)

The Plaintiff alleges that when he attempted to access Winn-Dixie's website, the website did not integrate with his screen reader software, "nor was there any function within [the] website to permit access for [the] visually impaired through other means." (*Id.* ¶¶ 27-28.) The Plaintiff alleges that due to the website's inaccessibility, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and

---

[1] In his response to the Defendant's Motion for Judgment on the Pleadings, the Plaintiff also alleged that Winn-Dixie's website allows customers to access coupons for in-store use and to sign up for a customer rewards program. (Resp. at 2, ECF No. 18.) However, these allegations are absent from the Complaint and will not be considered by the Court in ruling on the Defendant's motion.

accommodations provided by and through its website. (*Id.* ¶ 46.) He also claims that, for individuals "who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society." (*Id.* ¶ 49.)

On July 12, 2016, the Plaintiff filed the instant lawsuit, claiming that Winn-Dixie's website is in violation of the ADA because it is inaccessible to the visually impaired. (ECF No. 1.) On October 24, 2016, the Defendant filed its Motion for Judgment on the Pleadings, asserting that websites are not places of public accommodation under the ADA, and thus its website could not have violated the ADA as a matter of law. (ECF No. 15.) After the briefing was complete, the United States filed a Statement of Interest pursuant to 28 U.S.C. § 517. (ECF No. 23.) Winn-Dixie subsequently moved to strike the Statement of Interest. (ECF No. 25.) The Motion for Judgment on the Pleadings and the motion to strike are ripe for the Court's review.

**2.     Legal Standard**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial . . . ." Judgment on the pleadings is only appropriate if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.,* 404 F.3d 1297, 1303 (11th Cir. 2005) (citation omitted). In ruling on the motion, "[a]ll facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005) (citation omitted).

**3.     Analysis**

As an initial matter, the Court must address the Defendant's motion to strike the Government's Statement of Interest. The Defendant asserts that the Court must strike the Statement of Interest because it was untimely and filed without leave of the Court. (ECF No. 25.) However, as the Government explained, 28 U.S.C. § 517, which allows an officer of the Department of Justice ("DOJ") to file a statement of interest, contains no time limitation and does not require the Court's leave. (Resp. to Def.'s Mot. to Strike at 1-2, ECF No. 27.) Courts have interpreted 28 U.S.C. § 517 broadly and have generally denied motions to strike statements of interest. *See, e.g., Alvey v. Gualtieri,* No. 15–1861, 2016 WL 6071746, at *2 (M.D. Fla. Oct. 17, 2016) (denying motion to strike United States' statement of interest because it was timely, not redundant, and provided the "valuable perspective" of the DOJ); *Ferrand v. Schedler,* No. 11-926, 2012 WL 1247215, at *1-2 (E.D. La. April 13, 2012)

(denying motion to strike United States' statement of interest and noting that "the United States has broad discretion to attend to any interests of the United States"). Accordingly, the Court **denies** Winn-Dixie's motion to strike (ECF No. 25) and will proceed to its analysis of whether websites are public accommodations under the ADA.

Title III of the ADA prohibits the owner of a place of public accommodation from discriminating "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. . ." 42 U.S.C. § 12182(a). The ADA defines a public accommodation as a private entity whose operations affect commerce, and which falls within one of the following twelve categories:

> A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> B) a restaurant, bar, or other establishment serving food or drink;
>
> C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> G) a terminal, depot, or other station used for specified public transportation;
>
> H) a museum, library, gallery, or other place of public display or collection;
>
> I) a park, zoo, amusement park, or other place of recreation;

> J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

The Attorney General has promulgated regulations that further define a public accommodation as "a facility operated by a private entity, whose operations affect commerce and fall within at least one of [42 U.S.C. § 12181(7)'s twelve categories]." 28 C.F.R. § 36.104. The regulation defines "facility" as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." *Id.*

Winn-Dixie admits that its physical grocery stores and pharmacies are places of public accommodation. (Answer ¶ 16, ECF No. 7.) However, Winn-Dixie disputes that its website qualifies as a public accommodation under the ADA. The Plaintiff asserts that Winn-Dixie's website is a public accommodation for two reasons. First, the Plaintiff asserts that Winn-Dixie's website is a public accommodation in and of itself because it allows customers to fill or re-fill prescriptions for in-store pick up or for delivery. (Compl. ¶ 21, ECF No. 1.) Therefore, the Plaintiff asserts that this service makes Winn-Dixie's website a sales establishment, which is an enumerated public accommodation pursuant to the ADA. (*Id.*) Second, the Plaintiff asserts that the website is "directly connected" to the physical stores and has a "true nexus" to Winn-Dixie's grocery and pharmacy stores. (*Id.* ¶¶ 5, 20.) In furtherance of this assertion, the Plaintiff alleges that the website "augments" Winn-Dixie's physical store locations by assisting customers in finding physical store locations, educating the public as to the line of Winn-Dixie brand grocery items as well as other grocery items, and providing the public with the ability to fill and re-fill prescriptions from its pharmacy for in-store pick-up and delivery. (*Id.* ¶ 67.)

Courts are split on whether the ADA limits places of public accommodation to physical spaces. Courts in the First, Second, and Seventh Circuits have found that the ADA can apply to a website independent of any connection between the website and a physical place. *See, e.g., Morgan v. Joint Admin. Bd., Retirement Plan of the Pillsbury, Co., and others*, 268 F.3d 456, 459

(7th Cir. 2001) (citations omitted) (stating that "An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. . . The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services."); *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565, 576 (D. Vt. 2015) (holding that Scribd's website, which allows consumers to access a digital library for a monthly fee, is a place of public accommodation even though it is not associated with any physical location); *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F.Supp.2d 196, 200-02 (D. Mass. 2012) (concluding that Netflix's on-demand service website is a place of public accommodation even though its services are accessed exclusively in the home). Courts in these circuits have typically looked at Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages available indiscriminately to other members of the public, and at the legislative history of the ADA, which indicates that Congress intended the ADA to adapt to changes in technology. *See, e.g.*, *Scribd Inc.*, 97 F.Supp.3d at 574-6; *Netflix, Inc.*, 869 F.Supp.2d at 200-01.

On the other hand, courts in the Third, Sixth, and Ninth Circuits have concluded that places of public accommodation must be physical places, and that goods and services provided by a public accommodation must have a sufficient nexus to a physical place in order to be covered by the ADA. *See, e.g.*, *Earll v. Ebay, Inc.*, 599 Fed. App'x. 695, 696 (9th Cir. 2015) (the term "place of public accommodation" requires some connection between the good or service alleged to be discriminatory and a physical place); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3rd Cir. 1998) (finding that the term public accommodation does not refer to non-physical access); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010-11 (6th Cir. 1997) (stating that a public accommodation is a physical place). Courts in these circuits have concluded that a public accommodation must be a physical place because the twelve enumerated categories of public accommodations in the statute are all physical places. *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *Parker*, 121 F.3d at 1010-11; *Ford*, 145 F.3d at 612-13.

The Eleventh Circuit has not addressed whether websites are public accommodations for purposes of the ADA. However, the Eleventh Circuit's decision in *Rendon v. Valleycrest Prods., Inc.* offers some guidance. 249 F.3d 1279 (11th Cir. 2002). The *Rendon* Court noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant

entity's goods, services and privileges. . ." 249 F.3d at 1283 (citations omitted). *Rendon* involved an automated telephone answering system used by the television show "Who Wants to Be a Millionaire" to select contestants to appear on the program. *Id.* at 1280. The *Rendon* Court held that the plaintiffs stated a valid claim under the ADA because the plaintiffs alleged that the inaccessibility of the automated system to persons with hearing and upper-body mobility impairments effectively denied them access to a privilege (competing in the television show) offered by a public accommodation (the television studio). *Id.* at 1284-86 (noting that the plaintiffs "seek the privilege of competing in a contest held in a concrete space. . .").

District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that the ADA does not apply to a website that is wholly unconnected to a physical location. *Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801, at 8 (S.D. Fla. Feb. 2, 2017) (Lenard, J.) (holding that a website that is wholly unconnected to a physical location is generally not a place of public accommodation under the ADA); *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F.2d 1312, 1321 (S.D. Fla. 2002) (Seitz, J.) (dismissing complaint because the plaintiffs failed to establish a nexus between the defendant's website and a physical, concrete place of public accommodation); *Kidwell v. Florida Comm'n on Human Relations*, No. 16-403, 2017 WL 176897, at *4 (M.D. Fla. Jan. 17, 2017) (holding that a website is not a public accommodation under the ADA). However, district courts in the Eleventh Circuit have found that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. *Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801 at 9 (citing *Rendon* for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss); *Gomez v. J. Lindeberg USA, LLC*, No. 16-22966, at 2-3 (S.D. Fla. Oct. 17, 2016) (Williams, J.) (order granting default judgment in part) (finding that plaintiff stated a claim under the ADA by alleging that the inaccessibility of the defendant's website prevented him from purchasing the defendant's clothing online and searching for physical store locations); *Access Now*, 227 F.2d at 1320. Indeed, this concept has support in *Rendon*. There, the Eleventh Circuit noted that some courts require a nexus between the challenged service and the premises of the public accommodation, and that the plaintiffs in that matter demonstrated such a nexus. 249 F.3d at 1284 n.8.

Here, the Defendant asserts that the Plaintiff has not alleged an adequate nexus between its website and its physical grocery stores and pharmacies, reasoning that the Plaintiff does not assert that the inaccessibility of the

website prevented him from visiting a Winn-Dixie store or pharmacy. (Mot. for J. on the Pleadings at 7-8, ECF No. 15.) The Defendant cites *Rendon* in support of this argument. (*Id.*) However, the *Rendon* Court noted that the ADA bars "intangible barriers. . . that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges. . ." 249 F.3d at 1283 (citations omitted). In *Rendon*, the issue was not that the inaccessibility of the automated phone system prevented the plaintiffs from physically accessing the television studio, but rather that the inaccessibility of the phone system prevented the plaintiffs from accessing a privilege (the opportunity to be a contestant on the television show) afforded by the television studio.

In a case remarkably similar to this one, the Northern District of California denied the defendant's motion to dismiss a complaint alleging that Target Corp.'s ("Target") website failed to comply with the ADA. *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 949 (N.D. Cal. 2006). The plaintiff alleged that Target's website, which was inaccessible to blind individuals, allowed customers to perform functions related to Target stores, such as access information about store locations and hours, refill prescriptions, and order photo prints for pick-up at a store. *Id.* The *Target Corp.* court noted that in *Rendon*, even though the plaintiffs did not contest the actual physical barriers of the studio, the Eleventh Circuit found that the ADA was implicated because the plaintiffs were deprived of the opportunity to compete to be a contestant on the television show. *Id.* at 955 (citations omitted). The *Target Corp.* court further noted that the statutory language of the ADA "applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation," and concluded that Target's website was "heavily integrated with the brick-and-mortar stores and operates in many ways as a gateway to the stores." *Target Corp.*, 452 F.Supp.2d at 953, 955 (emphasis added) (citations omitted).

In *Gomez v. J. Lindeberg, Inc.*, Judge Williams cited to *Target Corp.* in finding that a plaintiff stated a claim that the defendant's website violated the ADA because the plaintiff alleged that the website was inaccessible to blind individuals and allowed customers to purchase the defendant's clothing online and search for physical store locations. *Gomez v. J. Lindeberg, Inc.*, No. 16-22966 at 3. Similarly, here the Plaintiff has alleged that the inaccessibility of Winn-Dixie's website has denied blind individuals the ability to enjoy the services, privileges, and advantages of Winn-Dixie's stores. Specifically, the Plaintiff has alleged, among other things, that Winn-Dixie's website allows customers to locate physical Winn-Dixie store locations and fill and refill prescriptions for in-store pick-up or delivery. (Compl. ¶¶ 17, 19, ECF No. 1.) Viewing the facts in the light most favorable to the Plaintiff, it appears that,

just as in *Target Corp.*, Winn-Dixie's website is heavily integrated with, and in many ways operates as a gateway to, Winn-Dixie's physical store locations. The website's alleged inaccessibility therefore denies the Plaintiff equal access to the services, privileges, and advantages of Winn-Dixie's physical stores and pharmacies.

The Court finds that the Plaintiff has sufficiently alleged a nexus between Winn-Dixie's website and its physical stores such that the Defendant is not entitled to judgment as a matter of law. Therefore, the Court need not determine whether Winn-Dixie's website is a public accommodation in and of itself.

**4.     Conclusion**

For the reasons set forth above, the Court **denies** the Defendant's motion to strike the Government's Statement of Interest (ECF No. 25) and **denies** the Defendant's Motion for Judgment on the Pleadings (ECF No. 15.)

**Done and ordered**, at Miami, Florida, on March 15, 2017.

_____
Robert N. Scola, Jr.
United States District Judge