United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Juan Carlos Gil, Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 16-23020-Civ-Scola |
| ) | |
| Winn-Dixie Stores, Inc., Defendant ) | |

## **Verdict and Order Following Non-Jury Trial**

The Plaintiff brings this action under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181-12189 (the "ADA"), alleging that the Defendant's website, www.winndixie.com, is inaccessible to the visually impaired. The Plaintiff seeks declaratory and injunctive relief, as well as attorneys' fees and costs.

Juan Carlos Gil is a visually impaired individual who is a customer of Winn-Dixie Stores, Inc. ("Winn-Dixie"). Winn-Dixie is the owner and operator of a regional chain of grocery stores, some of which have pharmacies. The parties do not dispute that Gil has a qualified disability under the ADA. The parties also do not dispute that Winn-Dixie's grocery stores and pharmacies are public accommodations as defined by the ADA. The issues remaining to be determined are: (1) whether Winn-Dixie's website is subject to the ADA as a service of a public accommodation, or, in the alternative, whether the website is a public accommodation in and of itself; (2) whether Gil was denied the full and equal enjoyment of Winn-Dixie's goods, services, facilities, privileges, advantages, or accommodations because of his disability; and (3) whether the requested modifications to Winn-Dixie's website are reasonable and readily achievable.

On June 5 and 6, 2017, the Court held a non-jury trial. Prior to the trial, the parties submitted a Joint Pretrial Stipulation (ECF No. 34), as well as their proposed findings of fact and conclusions of law (ECF Nos. 38, 39.) The Court has carefully reviewed these submissions. After considering the credible testimony and evidence, and the applicable law, the Court finds that the Defendant has violated the Plaintiff's rights under the ADA. As a result, the Court finds in favor of the Plaintiff on Count One of the Complaint.

### **1. Findings of Fact**

The Court heard testimony from three witnesses: Juan Carlos Gil, Rodney Cornwell, and Chris Keroack. There were virtually no disputes in the

testimony and evidence and the Court found all three witnesses to be credible and forthcoming.

Plaintiff, Juan Carlos Gil, has resided in Miami for 25 years. He is visually impaired, is legally blind and has cerebral palsy. He lives in the area of SW 27th Avenue and Coral Way. He wears glasses because he has optic nerve hypoglasia. The glasses help protect his eyes from foreign objects.

He is able to use a computer but cannot see the screen. He uses access technology software. He uses JAWS or other screen reader software. The screen reader automatically tells Gil what is going on on the website. Every time he hits the tab or shift tab the program will tell him what he needs to type. He cannot use a mouse but uses a keyboard.

He uses JAWS 95% of the time. If JAWS crashes, he needs to have alternate screen access programs. He has used these screen access programs for over 25 years. He uses JAWS most often because it is the industry standard.

NVDA is a consortium of individuals who are blind who have created an access method for people who cannot afford JAWS. JAWS costs about $1200. Gil uses NVDA sometimes but its functions are rudimentary and JAWS works much better than NVDA.

NVDA has human sounding voices and JAWS has robotic voices.

Gil has also used Voiceover software when he uses his Mac Book Pro which is an excellent screen access program.

Windows has the Narrator screen access software but it does not work well at all.

There is no federal organization that mandates particulars of website accessibility. The Web Content Accessibility Guidelines (WCAG) is produced by a consortium of private organizations whose goal is to make websites accessible for all.

Gil also uses the Google search engine to locate businesses but it is faster to go directly to the business' website.

Gil used internet browsers Firefox, Internet Explorer and Safari on his different computers to access the Winn-Dixie website. He used Dell laptop and Mac computers to try to access the website.

Gil has worked with Florida Vision Technology for the past five years helping individuals maximize their potential with software. Prior to that, he volunteered for different organizations.

Gil has been a customer of Winn-Dixie. He went to school in 1999-2000 at the Florida School for the Deaf and Blind in St. Augustine, Florida. He graduated in 2002.

  He was in a vending program and the school did a trip for the students to go to Winn-Dixie to learn how to use the services to buy products for the vending stand they were operating.

  Since his only income at the time of graduation was from Social Security, Gil continued to use Winn-Dixie due to its low prices. The majority of Winn-Dixies have pharmacies and Gil sometimes used the pharmacies to fill his prescriptions.

  Gil most recently used the Winn-Dixie in the summer of 2015 in the area of 27th Avenue. He has a Winn-Dixie rewards card.

  Over the years, he shopped at Winn-Dixie 30 – 40 times. It is his main grocery store because of its low prices.

  The last time he filled a prescription at Winn-Dixie was 2.5 to 3 years ago.

  To refill the prescription, he would go into the store and ask someone to assist him. A store employee would walk him to the area of the pharmacy and he would tell the pharmacist what he needed. But he felt uncomfortable because he did not know who else was nearby listening.

  He has used Walgreens and Publix to fill prescriptions. Sometimes he goes to the store to pick up the prescription and sometimes they would deliver the prescription to his home by carrier.

  Without an accessible website, his only way of getting coupons was to have a friend read the coupons from a newspaper. He would also ask employees to find coupons for him but sometimes the employees seemed annoyed by his request for help.

  In 2015-2016, he learned Winn-Dixie had a website and people in numerous organizations, including the Center for Independent Living, American Council of the Blind and National Federation of the Blind, told him the website was accessible. Gil was already familiar with using the screen reader software.

  Gil heard ads on TV for the Winn-Dixie website and heard one could access coupons and refill prescriptions online. He was interested since he could finally do something independently without asking somebody for help.

  When he accessed the Winn-Dixie website, some tabs worked but 90% did not work. Once you enter the website, you usually hit tab until you find a combo box like a box announcing "store hours" or "pharmacy." When the website is interfacing properly with the JAWS, you would then press enter and that would take you into the specific sub-category. But, when he tabbed through the website he could not access any of the sub-categories. He spent about a half an hour on the website but was not able to access any information including store locator. On other websites, he has been able to access store

locations. By pressing "control s" most websites take you to a search box in which you can type the specific information you are looking for. But this was not available on the Winn-Dixie website.

Gil has been on 500-600 other websites that actually work with the screen reader software.

An accessibility notice is put on a website by the creator to showcase that the website is working diligently to create a better experience for the low-vision or blind users. No accessibility notice was found on the Winn-Dixie website. Nothing on the Winn-Dixie website announced any proposed changes to be made in 2017.

When the website is accessible, Gil is 100% certain he will return to using Winn-Dixie stores. The inaccessibility of the website has deterred Gil from enjoying Winn-Dixie's goods and services.

Gil wants to be able to refill prescriptions online so he does not have to orally announce to the person at the store what medications he is filling to protect his privacy under HIPPA.

Gil travels to several cities in Florida including Jacksonville, Tampa, Orlando and Tallahassee to participate in Para-Olympic events. He travels with a laptop with screen reader software and he would want to be able to find a Winn-Dixie store through the Winn-Dixie website.

Gil has used other grocery stores because from their website he can create a shopping list and just hand it to the employee and he could use coupons he obtains from the website and he can pick up prescriptions in privacy. Both Publix and Walgreens have websites which he can use with his screen reader software.

Gil has gone on several federal government websites including NOAA and the Social Security Administration and his screen reader software, both for Windows and Mac, works well on those federal websites.

Rodney Cornwell testified in his capacity as corporate representative for Winn-Dixie. Southeastern Grocers is the parent company of Winn-Dixie and he is the vice president of IT, Application and Delivery. He is the person with the most knowledge regarding website digital applications.

Winn-Dixie currently is building an ADA policy for its website but does not have one as of today. It is feasible for the website to be modified to be accessible to the disabled and independent of this law suit, Winn-Dixie is taking steps to modify the website and will modify the website to make it accessible to the disabled. Winn-Dixie is considering the WCAG guidelines among other sources in determining how to address the accessibility issue. The present website has not been tested by Winn-Dixie for use with universal screen readers.

There is a whole new group in the executive management of Winn-Dixie and many of the new leaders came from Australia where disability accessibility was mandated and this new group decided to modify the website to make sure it is accessible by the disabled.

There are 6 different third parties, including Google and American Express, who interface with Winn-Dixie's website so Winn-Dixie needs to make sure that those third parties also make sure that their websites are accessible. Winn-Dixie intends to implement the modification to its website by getting everyone, including the third party vendors, on board.

Winn-Dixie has set aside $250,000 for the project to make its website accessible. Winn-Dixie is trying to determine what the appropriate standard for the website should be. There are multiple screen readers and multiple browsers that need to be accommodated. There are quite a few screen reader companies out there.

Winn-Dixie does not conduct any sales directly from its website but the website does allow customers to access digital coupons and click a "plus" sign which would link that coupon to the customer's Winn-Dixie card and when the customer purchased the item in the store, the value of the coupon would be automatically applied. The only way to have a digital coupon that links up to a customer's reward card is through the Winn-Dixie website.

The website also allows a customer to locate a store near him or her. There are currently 495 stores in Georgia, Florida, Alabama Louisiana and Mississippi.

From the "pharmacy" tab on the website, one can refill prescriptions, manage your account among other options. The website allows one to choose any of the Winn-Dixie stores with a pharmacy to pick up the prescription.

A new prescription cannot be filled online but existing prescriptions can be refilled online. A customer would need to go to the Winn-Dixie store to pick up the prescription. There is no delivery service.

Cornwell has learned that technology exists that allows a website to be coded in such a way to interface with screen reader software.

Winn-Dixie knows that it is feasible to make its website accessible to screen reader software and has set aside $250,000 to do this. This amount was based upon high level input, including from prior experience in Australia where accessibility was mandated.

The current website was created in September 2015 and at that time, there was no discussion whatsoever about the website's accessibility to the disabled.

When the Plenti rewards program was rolled out in early 2017 there were modifications made to the website at the cost of $7 million but there was no

effort to make the website accessible to the disabled. The modifications to the website went far beyond just implementing the Plenti program. There is a template component, content component and functionality component.

Chris Keroack resides in Bothel, Washington and works at Equal Entry, a company that tests mobile and web software for accessibility issues.

Keroack started at Microsoft in 1994 and was a software tester on the team for Microsoft Works. He later worked on the Windows development group and was responsible for accessibility testing advice.

He worked for another company specializing in web accessibility until working for Equal Entry.

Web accessibility is about ensuring that all people are able to use the web regardless of any physical or mental disabilities.

Keroack is familiar with screen reader software which works with a web browser and page to describe the contents of the web page with a user-selected voice.

If the web page is using the common industry standards or following the World Wide Web Consortium accessibility guidelines then screen reader software should work on the web page. The consortium is made up of a group of committees and subcommittees with representatives from government and industry.

Keroack was asked to do an analysis of the Winn-Dixie website. He used automated and manual means. The automated means called Access Lint searches for source code of the website. He also used manual testing including using the NVDA screen reader software to test whether the software allowed one to successfully obtain information from the website.

Keroack is familiar with the JAWS screen reader software which is one of the original technologies. Both JAWS and NVDA are substantial market leaders. NVDA adheres as closely as possible to the WCAG guidelines. JAWS has additional codes that allows it to work around or anticipate common issues on a website or webpage.

Keroack tested the main website as well as the digital coupon, store locator, and pharmacy sections.

Keroack did not conduct a complete audit but did a brief overview of the most critical and obvious functionality on the Winn-Dixie website attempting to perform simple tasks that it would be reasonable to expect someone to do who used the website.

Keroack opines that most of the accessibility issues can be corrected with simple modifications of one or two source codes. The WCAG address all of the issues/problems found on the Winn-Dixie website.

WCAG is the industry standard for accessibility and the current version WCAG 2.0 was finalized in 2008 and was adopted as an international organizations standard in 2012.

The federal government's Access Board, through a refresh of § 508 of the Rehabilitation Act which was finalized in January 2017, has virtually adopted the WCAG guidelines.

Keroack estimates that thousands of businesses in E-commerce are using the WCAG guidelines.

Keroack recommends that Winn-Dixie conduct a full audit of the website which would take three weeks. A report would then be prepared which would be referred to in making the modifications.

Keroack believes that if Equal Access were hired to conduct a full audit it would cost $9,000 to $11,000. After identifying the problems through the audit, it would take 80 to 100 hours at a billable rate of $200 per hour or $16,000 to $20,000. This would be followed by a smaller version of the audit at a cost of $4,000 to $6,000. Thus, his company could fix all the problems for $37,000 or less. This is a ballpark estimate which could change based upon the results of the full audit. Keroack can't imagine that it would ever cost in the neighborhood of $250,000 to fix the issues.

In Keroack's experience, it is not difficult to work with third parties who are part of the website. And, many of the third party vendors may already have appropriate accessibility software consistent with WCAG guidelines.

For instance, Google Maps, which is used as part of the store locator feature on the Winn-Dixie website, already has WCAG compliant accessibility.

All of the main internet browsers such as Google Chrome, Internet Explorer, and Safari comply with WCAG guidelines. If your website is accessible through one of those browsers, it should be accessible for anyone using the other main browsers. There are other lesser known and lesser used browsers. If a company's website is accessible to the main browsers but not for a lesser browser, it is most likely the responsibility of the browser, not the company, to correct any problems. The same reasoning applies to screen reader programs. If a company's website is compatible with a main screen reader program such as NVDA or JAWS and is not compatible with a lesser used screen reader program, the burden is on the program, not the company to resolve the problem.

The Court finds that whether the cost to modify the website is $250,000 or $37,000 is of no moment. Though that higher cost seems high, it pales in comparison to the $2 million Winn-Dixie spent in 2015 to open the website and the $7 million it spent in 2016 to remake the website for the Plenti program. Plus, Cornwell unequivocally testified that it is feasible to make the

modifications and that Winn-Dixie is currently in the process of making those modifications.

The Court also finds that the fact that third party vendors operate certain parts of the Winn-Dixie website is not a legal impediment to Winn-Dixie's obligation to make its website accessible to the disabled. First, many, if not most, of the third party vendors may already be accessible to the disabled and, if not, Winn-Dixie has a legal obligation to require them to be accessible if they choose to operate within the Winn-Dixie website.

### 2. Conclusions of Law

The Court has jurisdiction over this matter under the ADA. As an initial matter, the Court must address whether Gil has standing to bring his claim. A plaintiff has standing to bring a claim if the following three elements are met: (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). In order to obtain injunctive relief, a party must also show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future. *Wooden v. Bd. of Regents of Univ. System of Georgia*, 247 F.3d 1262, 1283 (11th Cir. 2001).

A plaintiff's allegation that he intends on visiting the subject premises in the near future is sufficient to establish standing to seek injunctive relief under the ADA. *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000) (holding that allegation that the plaintiff would take another cruise aboard the defendant's ship in the near future was sufficient to properly plead standing to seek injunctive relief under the ADA). Since Gil alleges that he tried unsuccessfully to access Winn-Dixie's website and that he intends to patronize Winn-Dixie stores again if he can access Winn-Dixie's website, he has sufficiently alleged both an injury in fact and a sufficient likelihood that he will continue to be affected by the inaccessibility of the website. In addition, there is a causal connection between the injury and the alleged inaccessibility of the website, and it is likely that the injury will be redressed by a favorable decision. Therefore, Gil has standing to bring his claim.

Title III of the ADA prohibits the owner of a place of public accommodation from discriminating "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). There is no dispute that Gil is visually impaired, or that Winn-Dixie's physical store locations are public accommodations. Thus, the Court must determine whether, as a result of the fact that he is visually impaired, Gil

was denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

The ADA defines a public accommodation as a private entity whose operations affect commerce, and which falls within one of twelve enumerated categories. 42 U.S.C. § 12181(7). Courts are split on whether the ADA limits places of public accommodation to physical spaces. Those circuits that have concluded that places of public accommodation must be physical spaces have held that the goods and services provided by a public accommodation must have a sufficient nexus to a physical place in order to be covered by the ADA. *See, e.g., Earll v. Ebay, Inc.*, 599 Fed. App'x. 695, 696 (9th Cir. 2015) (the term "place of public accommodation" requires some connection between the good or service alleged to be discriminatory and a physical place); *see also Rendon v. Valleycrest Prods., Inc.*, 294 F.3d 1279, 1284 n.8 (11th Cir. 2002) (noting that some courts require a nexus between the challenged service and the premises of the public accommodation). The Eleventh Circuit has not addressed whether websites are public accommodations for purposes of the ADA. However, in *Rendon v. Valleycrest Prods., Inc.*, the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283.

Where a website is heavily integrated with physical store locations and operates as a gateway to the physical store locations, courts have found that the website is a service of a public accommodation and is covered by the ADA. *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 953-55 (N.D. Cal. 2006); *see also Gomez v. J. Lindeberg, Inc.*, No. 16-22966, ECF No. 23, at *3 (S.D. Fla. Oct. 17, 2016) (Williams, J.) (finding that a plaintiff stated a claim that the defendant's website violated the ADA because the plaintiff alleged that the website was inaccessible to blind individuals and allowed customers to purchase the defendant's clothing online and search for store locations). On the other hand, where a website is wholly unconnected to a physical location, courts within the Eleventh Circuit have held that the website is not covered by the ADA. *Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801, at 8 (S.D. Fla. Feb. 2, 2017) (Lenard, J.) (holding that a website that is wholly unconnected to a physical location is generally not a place of public accommodation under the ADA); *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F.2d 1312, 1321 (S.D. Fla. 2002) (Seitz, J.) (dismissing complaint because the plaintiffs failed to establish a nexus between the defendant's website and a physical, concrete

place of public accommodation); *Kidwell v. Florida Comm'n on Human Relations*, No. 2:16-403, 2017 WL 176897, at *4 (M.D. Fla. Jan. 17, 2017) (holding that a website is not a public accommodation under the ADA, and dismissing the plaintiff's ADA claim in part because the plaintiff could not demonstrate that the website's inaccessibility prevented his access to a specific, physical, concrete space).

The Court need not decide whether Winn-Dixie's website is a public accommodation in and of itself, because the factual findings demonstrate that the website is heavily integrated with Winn-Dixie's physical store locations and operates as a gateway to the physical store locations. Although Winn-Dixie argues that Gil has not been denied access to Winn-Dixie's physical store locations as a result of the inaccessibility of the website, the ADA does not merely require physical access to a place of public accommodation. Rather, the ADA requires that disabled individuals be provided "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). The services offered on Winn-Dixie's website, such as the online pharmacy management system, the ability to access digital coupons that link automatically to a customer's rewards card, and the ability to find store locations, are undoubtedly services, privileges, advantages, and accommodations offered by Winn-Dixie's physical store locations. These services, privileges, advantages, and accommodations are especially important for visually impaired individuals since it is difficult, if not impossible, for such individuals to use paper coupons found in newspapers or in the grocery stores, to locate the physical stores by other means, and to physically go to a pharmacy location in order to fill prescriptions.

The factual findings demonstrate that Winn-Dixie's website is inaccessible to visually impaired individuals who must use screen reader software. Therefore, Winn-Dixie has violated the ADA because the inaccessibility of its website has denied Gil the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations that Winn-Dixie offers to its sighted customers.

Accordingly, the Court finds in favor of the Plaintiff on Count One of the Complaint.

### 3. Remedy

Under the ADA, a prevailing plaintiff is not entitled to damages, but he may recover reasonable attorneys' fees. 42 U.S.C. §§ 12188(a), 12205, 2000a–3(b). Injunctive relief is available under the ADA if the discrimination includes "a failure to remove architectural barriers, and communication barriers that

are structural in nature, in existing facilities . . . where such removal is readily achievable." 42 U.S.C. §§ 12188(a)(2), 12182(b)(2)(A)(iv). In addition, the ADA:

> [R]equires without exception that any policies, practices, or procedures of a public accommodation be reasonably modified for disabled individuals as necessary to afford access unless doing so would fundamentally alter what is offered. To comply with this command, an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration.

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001) (internal quotations and citations omitted); *see also Ass'n for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F.Supp.2d 1353, 1362 (S.D. Fla. 2001) (Highsmith, J.) (citations omitted) (the determination of whether a particular modification is reasonable involves a fact specific inquiry that considers, among other things, the effectiveness of the modification and the cost of implementation).

Winn-Dixie has presented no evidence to establish that it would be unduly burdensome to make its website accessible to visually impaired individuals. To the contrary, its corporate representative unequivocally testified that modifying the website to make it accessible to the visual impaired was feasible. Remediation measures in conformity with the WCAG 2.0 Guidelines will provide Gil and other visually impaired consumers the ability to access Winn-Dixie's website and permit full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided through Winn-Dixie's website. Gil has proven that he is entitled to injunctive relief.

### 4. Attorneys' Fees

As the prevailing party, the Court, in its discretion, may allow Gil to recover reasonable attorneys' fees and costs. 42 U.S.C. §§ 12188(a), 12205, 2000a–3(b). If a motion for fees is required, Gil shall file such a motion in a timely manner.

Irrespective of the motion, within 10 days from this order, Gil shall provide Winn-Dixie with its detailed, itemized request for attorneys' fees.

Within 10 days of receipt, Winn-Dixie shall notify Gil of any objections to the fees request. The objection shall be specific and particularized as to date, time expended and reason for the objection.

Within 5 days of receipt of the objections, Gil shall notify Winn-Dixie of its position on the objections.

If there are unresolved objections, the Court will schedule an evidentiary hearing to resolve those objections. The parties must take depositions of any anticipated witnesses prior to the hearing.

If after the hearing the Court determines that Winn-Dixie has unreasonably objected to any of the fees, the Court will not hesitate to impose sanctions against Winn-Dixie and its attorneys, including, but not limited to, attorneys' fees and costs.

Conversely, if after the hearing Court determines that Gil has unreasonably sought any of its fees, the Court will not hesitate to impose sanctions against Gil and his attorneys, including, but not limited to, attorneys' fees and costs.

### 5. Terms of Injunction

The parties shall meet and confer to attempt to agree on the time periods for the following terms which shall be included in the injunction and shall file a joint report with their positions by no later than **June 30, 2017**. Any terms about which the parties agree shall be in regular font. For terms about which the parties disagree, the Plaintiff's proposal shall be presented in underlined font and the Defendant's proposal shall be in bold font. Any additional terms requested by either party shall also be included in the joint report.

Pursuant to the terms of this Order and Injunction, Winn-Dixie, Inc.:

1. Shall not, no later than __(date)_____, deny individuals with disabilities, including the Plaintiff, the opportunity to participate and benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through its website www.winndixie.com. The website must be accessible by individuals with disabilities who use computers, laptops, tablets, and smart phones.

2. Shall not, no later than __(date)_____, provide individuals with disabilities, including the Plaintiff, an unequal opportunity to participate and benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through its website www.winndixie.com. The website must be accessible by individuals with disabilities who use computers, laptops, tablets and smart phones.

3. No later than _____(date)_____, shall adopt and implement a Web Accessibility Policy which ensures that its website conforms with the WCAG 2.0 criteria.

4. No later than __(date)_____, shall require any third party vendors who participate on its website to be fully accessible to the disabled by conforming with WCAG 2.0 criteria.

5. No later than __(date)_____, shall make publicly available and directly link from the www.winndixie.com homepage, a statement of Winn-Dixie's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

6. No later than __(date)_____, and at least once yearly thereafter, shall provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, www.winndixie.com on how to conform all web content and services with WCAG 2.0 criteria.

7. No later than __(date)_____, and at least once every three months thereafter, shall conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with WCAG 2.0.

8. If the Plaintiff believes the Injunction has been violated, he shall give notice (including reasonable particulars) to the Defendant of such violation. The Defendant shall have 30 days from the notice to investigate and correct any alleged violations. If the Defendant fails to correct the violation, the Plaintiff may then seek relief from the Court.

9. In light of what the Court has already found to be the Defendant's sincere and serious intent to make its website accessible to all, this Injunction will expire in three years.

**Done and ordered** at Miami, Florida on June 12, 2017.

_____
Robert N. Scola, Jr.
United States District Judge